# In the United States Court of Federal Claims

No. 19-1791 C
Filed: May 31, 2022

|  |  |
|---|---|
| LUIS PINTO, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

*Luis Pinto*, Williamston, NC, *pro se*, Plaintiff.

*Joseph A. Pixley*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Jeffrey Bossert Clark*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, for the Defendant. *Nicholas D. Morjal*, Litigation Division, United States Army Legal Services Agency, *of counsel.*

## OPINION AND ORDER

**MEYERS, Judge.**

While serving as a Second Lieutenant in the Army, Luis Pinto engaged in fraternization that led to a Board of Inquiry investigation, which substantiated certain misconduct but recommended that the Army retain Pinto. Although the Army did not discharge Pinto for the fraternization, this conduct led the Army to deny Pinto promotion to First Lieutenant twice. And the failure to be promoted is a mandatory ground for separation from service. But Pinto argues that the Army regulations prohibited his misconduct from being used against him in the promotion process. Because no regulation prohibited the Army from considering Pinto's conduct in deciding whether to promote him, there was nothing improper about his discharge for non-promotion. Therefore, the Court grants the Government's Partial Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record and denies Pinto's Motion for Judgment on the Administrative Record.

## I.    Factual Background

In May 2012, Pinto was commissioned as a Second Lieutenant ("2LT") in the United States Army and began a seven-year active-duty service obligation. *See* ECF No. 15 ¶ 12; ECF No. 21 at 3. In September 2013, the Army began investigating Pinto "for fraternization and for

having an improper relationship with a junior, female enlisted soldier in his unit." ECF No. 21 at 2. On September 19, 2013, Pinto's unit initiated a suspension of favorable personnel action (a "flag") on his personnel file due to the pending investigation. ECF No. 17-1 at AR 205. Among other things, Pinto was ineligible for promotion while the flag remained in place. ECF No. 21 at 4.

The investigation substantiated much of the alleged misconduct. ECF No. 17-1 at AR 239-40. Consequently, the Army issued a General Officer Letter of Reprimand ("GOMOR") and Pinto's superiors gave him an unfavorable Officer Evaluation Report ("OER"), which noted Pinto's "lack of judgment" and "strongly recommended" against his promotion. ECF No. 21 at 2. Based on his misconduct, Pinto was called before a Board of Inquiry ("BOI") to "show cause" for his retention in the military. ECF No. 17-1 at AR 324. The BOI concluded that the allegations against Pinto were supported by a preponderance of the evidence, but recommended the Army retain and transfer Pinto to another unit rather than discharge him for misconduct. *Id.* at AR 322-23. After the adverse action against him ended with the BOI findings, the Army removed the flag from Pinto's file on March 11, 2014. *Id.* at AR 328-31.

Following the removal of the flag from his file, Pinto was again eligible for promotion. Pinto's commanders issued Form 78-Rs recommending that he not be promoted to First Lieutenant ("1LT") on April 21, 2014, and October 27, 2014. ECF No. 27 at 3. Pinto submitted a response to his promotion denial, *see* ECF No. 17-1 at AR 337-39, and the promotion review authority made the final determination to deny Pinto's promotion on November 6, 2014. *Id.* at AR 340. In December 2014, the Army involuntarily separated Pinto. ECF No. 21 at 2.

Pinto appealed to the Army Board for Correction of Military Records ("ABCMR") seeking reinstatement and a retroactive promotion as well as correction of his military service records to reflect his allegedly wrongful promotion denial and separation. ECF No. 18 at 17; ECF No. 17-1 at AR 143. The ABCMR denied his application in October 2019, finding that: (1) there was insufficient evidence to warrant removing Pinto's GOMOR and OER from his record and (2) Pinto's other requests for relief, including his request for a promotion, were "without merit." ECF No. 17-1 at AR 77-78, 91. Subsequently, Pinto filed suit in this Court and on January 28, 2020 the Court remanded the case to the ABCMR to "issue a new decision that fully addresses Mr. Pinto's promotion and more fully develops the record." ECF No. 6 at 1. On April 3, 2020, the ABCMR issued a new decision providing a more fulsome analysis and reiterating its previous findings. ECF No. 13.

Before this Court, Pinto claims he is entitled to military pay and "collateral relief, including placement in an appropriate duty status and correction of [his] military record." ECF No. 15 ¶ 1. Specifically, Pinto requests a retroactive promotion to 1LT, appointment in the Army Reserves, back pay for the higher rank of 1LT, and correction of all related military records. *Id.* ¶ 78. Pinto's Motion for Judgment on the Administrative Record asserts that: (1) the Army exceeded its authority when it denied his promotion to 1LT and discharged him, and (2) the ABCMR's latest decision to affirm these actions "was arbitrary, capricious, unsupported by substantial evidence, and contrary to law." ECF No. 18 at 6.

## II.     Jurisdiction

Establishing jurisdiction is a threshold matter.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Rules of the United States Court of Federal Claims ("RCFC") 12(h)(3).  The Tucker Act, 28 U.S.C. § 1491(a)(1), gives this Court authority to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  But the Tucker Act does not create a cause of action, so "there [must] be a separate money-mandating statute the violation of which supports a claim for damages against the United States."  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).  In this context, a money-mandating statute is one that is "*reasonably amenable* to the reading that it mandates a right of recovery in damages."  *Fisher v. United States*, 402 F.3d 1167, 1173-74 (Fed. Cir. 2005) (emphasis in original) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472-73 (2003)).

The Military Pay Act, 37 U.S.C. § 204, "serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge." *Holley*, 124 F.3d at 1465.  This is because "[i]f the discharge was wrongful the statutory right to pay continues; this right serves as the basis for Tucker Act jurisdiction."  *Id.*  The Military Pay Act entitles active-duty members of a uniform service "to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service . . . ."  37 U.S.C. § 204(a)(1). "In general, the subject of military promotions is beyond the competence of courts to review. However, the Military Pay Act . . . provides for suit in the Court of Federal Claims when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004) (citations omitted).  Thus, "redress may be afforded for a promotion improperly denied."  *Id.*  Military promotion claims are money-mandating "when (1) a service member met the legal requirements for promotion (had a 'clear-cut legal entitlement'), but the service failed to recognize it; or (2) non-promotion led to the service member's involuntary discharge."  *Pedden v. United States*, 145 Fed. Cl. 785, 795 (2019) (citing *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294-95 (Fed. Cir. 2004)).

When there is a "clear cut legal entitlement to a position" the Court examines "whether the officer by delegation is exercising Presidential discretion in declining to grant the appointment or whether the official is improperly construing the Constitution, a statute, or regulation directing appointments (in which case the action is reviewable)."  *Lewis v. United States*, 458 F.3d 1372, 1377-78 (Fed. Cir. 2006) (citation omitted).  Furthermore, when a service member is involuntarily discharged due to an unlawful non-promotion, "the Military Pay Act would give the service member a right to back pay, because the Act confers on an officer the right to pay of the rank he was appointed to up until he is properly separated from the service." *Smith*, 384 F.3d at 1295 (citations and internal quotation marks omitted).

Here, Pinto's second non-promotion led to his involuntary discharge.  His monetary claims are thus within this Court's jurisdiction.  Further, because the equitable relief Pinto seeks is collateral to the action for monetary relief, the Court has the authority to grant such equitable relief if the Court were to grant him a monetary judgment.  *See Roth v. United States*, 378 F.3d

3

1371, 1384 (Fed. Cir. 2004) (providing that in actions for monetary relief "although the Court of Federal Claims does not possess general equity jurisdiction" it may "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" in order "[t]o provide an entire remedy and to complete the relief afforded by the judgment . . .") (alteration in original) (quoting 28 U.S.C. § 1491(a)(2)).

## III.    Standard of Review

### A.    Motion to Dismiss

When evaluating a motion to dismiss, the Court assumes the veracity of the complaint's well-pleaded factual allegations, drawing all reasonable inferences "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). The Court must then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under RCFC 12(b)(6), the Court must dismiss a complaint "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### B.    Motion for Judgment on the Administrative Record

A motion for judgment on the administrative record provides an expedited "trial on a paper record, allowing fact-finding" by the Court. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike a motion for summary judgment, the Court may grant a motion for judgment on the administrative record even if there is a genuine dispute of material fact. *See id.* at 1355-56. In lieu of an evidentiary trial, the Court references the administrative record to resolve any question of fact. *See id.* at 1356.

For military pay cases, the Court is generally limited to reviewing the administrative record. *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). The Court will not disturb a military correction board's determination unless the plaintiff proves by "cogent and clearly convincing evidence," that the determination "was arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citations omitted); *see also Metz*, 466 F.3d at 998 (providing that this is the "ordinary standard of review" for this Court when evaluating a military correction board's decision). This standard "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (emphasis in original). After all, it is well established "that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Id.* at 1156. Consequently, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citation omitted).

## IV.    Discussion

### A.    The Army's decision to deny Pinto's promotion is nonjusticiable.

The Government moves to dismiss Pinto's claims on justiciability grounds.  Justiciability is distinct from jurisdiction and deals with "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded."  *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) (quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)).  In other words, for Pinto to succeed, he must show that the Court has jurisdiction over his claims *and* that they present justiciable issues.  *See id.* ("The issue must also be justiciable; it must be within the competency of the court.").  "Justiciability is a particularly apt inquiry when one seeks review of military activities."  *See id.*  Thus, the Court will examine the Government's contentions that Pinto's claims are nonjusticiable *seriatim*.

First, the Government argues that the Army's decision to deny Pinto's promotion is nonjusticiable.  ECF No. 21 at 18-20.  The Court agrees.  Under Federal Circuit precedent, the merits of military promotion decisions simply are not justiciable.  *See Dysart*, 369 F.3d at 1317 (holding that the President cannot be compelled to appoint a military officer because the President's appointment power is discretionary); *Voge v. United States*, 844 F.2d 776, 779-80 (Fed. Cir. 1988) (holding that the military's exercise of discretion is nonjusticiable, even if the Court has Tucker Act jurisdiction).  Indeed, it is well established that "the court is not in the promotion business when selection for promotion is discretionary.  We cannot interfere in the business of the military unless there is a violation of statute or regulation or abuse of discretion amounting to legal error."  *Curry v. United States*, 609 F.2d 980, 983 (Ct. Cl. 1979) (citations omitted).  And the Court finds no such error here.

Second, the Government argues that the merits of Pinto's claims for a retroactive promotion and back pay are nonjusticiable.  The ABCMR found Pinto's request for reinstatement and retroactive promotion "outside the scope of the ABCMR's authority to effectuate" because "[t]he ABCMR does not have the authority to correct records to show an officer has been appointed to a certain grade when that officer has not been appointed to that grade by the President . . . ."  ECF No. 13 at 17.  Pinto contends that this finding "is of recent vintage and unsupported by law."  ECF No. 18 at 28-29.  But as the Government argues, "[t]his Court lacks authority to order Pinto's retroactive promotion . . . and may not make any award of money damages premised upon such a promotion . . . ."  ECF No. 21 at 20.  As the Federal Circuit explained, "strong policy reasons compel courts to allow the widest possible latitude to the armed services in their administration of personnel matters.  Accordingly, absent a statute or regulation entitling a service member to a promotion as a matter of law, the [Court of Federal Claims] has no authority to entertain" such claims.  *Voge*, 844 F.2d at 782 (citing *Ewanus v. United States*, 225 Ct. Cl. 598 (1980) and *Curry*, 609 F.2d at 983) (other citations and internal quotation marks omitted); *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed. Cir. 2000).  But there is no statute or regulation providing an entitlement to promotion here.  Accordingly, Pinto's claims for back pay are also nonjusticiable.  *See Dysart*, 369 F.3d at 1317 ("Because he was never appointed, the appellant is not entitled to the pay and benefits he would have received if he had been promoted to that grade.").

5

Lastly, the Government argues that the merits of the Army's decision to separate Pinto from military service is nonjusticiable. *See* ECF No. 21 at 20-21. The ABCMR affirmed Pinto's discharge because it found that "contrary to [Pinto's] contention that he was wrongfully discharged for misconduct/substandard performance under [Army Regulation ("AR")] 600-8-24, chapter 4, [he] was separated from service based on non-selection for promotion to O-2/1LT." ECF No. 13 at 17. According to Pinto, he could not have been discharged for misconduct under chapter 4 because his misconduct (i.e., the fraternization described in his GOMOR) had already been the subject of a BOI proceeding that resulted in a recommendation that the Army retain him. But the ABCMR found that because Pinto was separated for non-selection for promotion rather than his misconduct, the Army was free to consider "the underlying derogatory information" from the BOI proceeding during the promotion process. *Id.* Therefore, the ABCMR found that Pinto had "not demonstrated by a preponderance of the evidence that he was improperly or wrongfully discharged from service." *Id.*

This Court has no authority to determine a person's fitness to serve in the military because the "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province." *Heisig*, 719 F.2d at 1156. There is nothing in the promotion regulation that prohibited the Army from considering the substantiated misconduct that remains in Pinto's record. *See* ECF No. 21-2 at 12 (AR 600-8-29 ¶ 1-13(b)). Consequently, the Court will not review the Army's choice to use one regulatory provision over another to remove Pinto from service absent a procedural error.

Pinto counters that his claims are justiciable and that the *Dysart* and *Voge* cases upon which the Government relies are distinguishable from this case. *Dysart*, Pinto argues, is distinguishable because it dealt with the promotion of a senior officer (in the Constitutional sense—i.e., one that required Senate confirmation) rather than an inferior one like him. ECF No. 24 at 5-7. While it's true that the officer in *Dysart* was an admiral in the Navy and the adverse action was taken against him directly by the President rather than a subordinate official, none of these alleged distinctions distinguish this case from *Dysart*. The key question is whether the promotion was discretionary, not the rank of the officer denied promotion. The promotions here and in *Dysart* involved the exercise of the President's discretionary appointment power—a power that cannot be disrupted by the courts. *See Dysart*, 369 F.3d at 1317.

Pinto also contends that the Government incorrectly cited *Voge* for the absolutist position that the courts cannot even "examin[e] issues within the judiciary's special field of competence (such as clear regulatory and statutory procedural standards)." ECF No. 24 at 6-7. However, the Government specifically cites *Voge* for the proposition that the Court cannot entertain promotion claims "absent the violation of a statute or regulation." ECF No. 21 at 19. And this is precisely what *Voge* held. *Voge*, 844 F.2d at 782 ("[A]bsent a statute or regulation entitling a service member to a promotion as a matter of law, the Claims Court has no authority to entertain this claim [for retroactive promotion]."). Therefore, the Court finds these cases are not distinguishable from the present case.

**B.      The Court finds no procedural error.**

Although the merits of the Army's non-promotion decisions are nonjusticiable, allegations of procedural deficiencies remain justiciable, and consequently, reviewable by the Court. *Dysart*, 369 F.3d at 1315; *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007) ("[A] challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy.") (quoting *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995)); *Lindsay*, 295 F.3d at 1257 ("A claim of procedural violations may present a justiciable controversy because the test or standards against which this court measures the military's action are inherent: they are the applicable statutes and regulations.") (citation and internal quotation marks omitted); *Voge*, 844 F.2d at 780.  Therefore, for Pinto's Complaint to survive the Government's motion, he must establish a procedural deficiency and a "nexus between the error or injustice and the subsequent decision not to promote [him] or separate him . . . ."  *See Lindsay*, 295 F.3d at 1259 (citation omitted).  Accordingly, the Court examines each of Pinto's procedural claims in turn.

1.      <u>The delay in issuing the recommendation not to promote.</u>

Pinto argues that his non-promotion was untimely because his promotion was denied after his promotion eligibility date ("PED") had already passed, in violation of AR 600-8-29 ¶ 3-5b's requirement to process the promotion denial documentation—DA Form 78— "not later than the PED."  ECF No. 18 at 20-21.  He asserts that under AR 600-8-2 his promotion to 1LT happened automatically because it was not affirmatively stopped and his PED, which he claims was November 26, 2013, had passed.  ECF No. 24 at 10-11.  He admits that 10 U.S.C. § 624 justified the delay in his promotion while the adverse action against him was pending but insists that once his flag was removed on March 11, 2014, he was automatically promoted.  *Id.*

But the promotion to 1LT is not automatic.  Although AR 600-8-2 ¶ 2-2j(2) uses the word "automatic" in reference to putting a flag on the promotion to 1LT, AR 600-8-29, which governs the actual promotion, makes clear that the promotion to 1LT is not automatic.  AR 600-8-2 ¶ 2-2(j)(2) states that the promotion approval authority (*i.e.*, a lieutenant colonel or higher) "must Flag the officer" when "elect[ing] to deny an officer *automatic* promotion to . . . 1LT[] in accordance with AR 600-8-29."  ECF No. 24-1 at 10 (emphasis added).  But the regulations also make clear that Lt. Colonels and above "are authorized to promote officers to the grade[] of 1LT."  ECF No. 21-2 at 10 (AR 600-8-29 ¶ 1-7).  If the promotion to 1LT is automatic, it would be nonsensical for the regulations to grant senior officers the authority to approve or deny such a promotion.  Indeed, AR 600-8-29 ¶ 1-13b outlines the procedures for "[o]fficer[s] found not qualified for promotion to 1LT."  This indicates that officers may be deemed unqualified for promotion to 1LT and their promotions can be denied accordingly.  *Id.*  Thus promotion to 1LT is not automatic.

Here the Court compares these promotion regulations to ones that are automatic.  In the Army, junior enlisted soldiers below the rank of Specialist are promoted automatically upon reaching time requirements.  For these soldiers, AR 600-8-19 provides that junior enlisted soldiers are promoted "to the ranks of private enlisted two (PV2), private first class (PFC), and [Specialist] upon attainment of the required time in service . . . and time in grade . . . requirements."  AR 600-8-19 ¶ 1-9(c)(1).  But Army regulations provide no such

automatic promotion of 2LTs to 1LTs.  Instead, the regulations grant authority to senior officers to approve the promotion to 1LT.  When Pinto's flag was removed in March 2014, he merely became *eligible* for promotion—he was not automatically promoted.

While it is true that there was a relatively short delay between the date on which Pinto became eligible for promotion on March 11, 2014 and the issuance of the first Form 78-R on April 21, 2014, *see* ECF No. 17-1 at AR 332, such delay was harmless.  As explained above, because the promotion was not automatic but a discretionary act, the delay in being denied promotion did not prejudice Pinto.  And AR 600-8-29 ¶ 3-5b does not outline any consequences for failure to process an officer's Form 78 before the PED.  *See* ECF No. 27 at 10.  Where the relevant statute "spell[ed] out no consequences for delaying an appointment beyond the time limit indicated," *House v. United States*, 99 Fed. Cl. 342, 354 (2011), the Government's failure to meet the deadline "does not result in 'automatic promotion' by 'operation of law.'"  ECF No. 27 at 10 (citing *House*, 99 Fed. Cl. at 354-55).  And Pinto was given an opportunity to respond to the Form 78-R under the requisite procedures in processing his non-promotion.  Therefore, the delay in processing his Form 78-R was harmless and does not result in an automatic promotion.

### 2.   Pinto's separation under AR 600-8-24 ¶ 5-11 rather than ¶ 4-2a

Next, Pinto argues that the Army unlawfully denied his promotion "in order to discharge him from the military when that discharge was explicitly disallowed by regulation."  ECF No. 18 at 6.  Specifically, he claims that his discharge should have been governed by AR 600-8-29 ¶ 1-13b(3), which provides that 2LTs deemed unqualified for promotion "who have not been promoted at the end of [a] six month retention period will be processed for separation under the provisions of AR 600-8-24, paragraph 4-2a(2)."  Importantly, AR 600-8-24 ¶ 4-2a(2) provides reasons for discharge based on misconduct and is subject to a limitation which provides: "[N]o officer will be considered for elimination for reasons stated in paragraph 4-2 because of conduct that has been the subject of administrative elimination proceedings that resulted in final determination that the officer should be retained in the Service."  AR 600-8-24 ¶ 4-4b.  Because the non-promotion that led to Pinto's discharge was based on the same underlying misconduct as the concluded BOI investigation, he argues his separation was disallowed by ¶ 4-4b.  ECF No. 18 at 22-23.

The Government contends that the Army was not required to discharge Pinto under ¶ 4-2a(2); in fact, he was discharged under AR 600-8-24 ¶ 5-11, which outlines "[r]ules for separation of an officer due to nonselection of a field promotion."  ECF No. 21 at 21-22.  The Government argues that it did not have to follow ¶ 1-13b(3) and discharge Pinto under ¶ 4-2a(2) as he suggests because it instead used the waiver provision in AR 600-8-29 ¶ 1-13b(1).  This provision allows the promotion review authority to waive the six-month retention requirement "and direct immediate processing for separation under the provisions of AR 600-8-24 if the promotion review authority determines that the officer's retention is inconsistent with good order and discipline."  ECF No. 32 at 5-7.  Thus, because Pinto was separated due to non-selection for promotion under ¶ 5-11 and not for misconduct under ¶ 4-2a(2), the ¶ 4-4b limitation did not shield him from separation.

The ABCMR found that Pinto was not discharged for misconduct under AR 600-8-24, chapter 4 but instead "was separated from service based on non-selection for promotion to O-

2/1LT." ECF No. 13 at 17. This is amply supported by the record. Pinto's certificate of discharge (DD-214) lists the reason for separation as "non-selection, permanent promotion." ECF No. 17-1 at AR 135.[1] And the ABCMR found that "[r]etention by a BOI does not insulate an officer from consideration of the underlying derogatory information . . . during the promotion process." ECF No. 13 at 17. The ABCMR is correct here as well. There is nothing in the promotion regulation that prohibits the Army from considering any information about Pinto found in his record in deciding whether to promote him. Thus, the ABCMR determined that "the greater weight of the evidence did not reflect an error or injustice in the promotion consideration process and that [Department of Defense] policy and Army regulations regarding consideration of officers for promotion to O-2/1LT were complied with." *Id.*

Pinto argues that it was a procedural error for the Government not to follow ¶ 1-13b(3) because his first promotion denial occurred in April 2014 and his second promotion denial was not processed until October 2014, meaning he lasted the entire six-month abeyance period described in ¶ 1-13b(3). ECF No. 24 at 16-17; *see* ECF No. 17-1 at AR 332, 340. But the regulation allowed the Government to forego the six months entirely because the promotion review authority[2] determined that his "further service is not in the best interests of good order and discipline in this command." ECF No. 17-1 at AR 341. This finding allowed the Army to discharge Pinto immediately under AR 600-8-29 ¶ 1-13(b)(1), which provides: "[t]he promotion review authority . . . may waive this requirement [to hold the discharge in abeyance for six months] and direct immediate processing for separation under the provisions of AR 600-8-24 if the promotion review authority determines that the officer's retention is inconsistent with good order and discipline." Although Pinto's second promotion denial did not come until the end of the six-month abeyance period, the waiver provision in ¶ 1-13b(1) does not include a time limit. Thus, at any time, if an officer's retention is found to be "inconsistent with good order and discipline," the promotion review authority has discretion to order the officer's discharge under the provisions of AR 600-8-24 more broadly and is not restricted to using ¶ 4-2a(2). As the ABCMR found, it was wholly appropriate for the Army to discharge him under ¶ 5-11, which provides for the separation of officers denied promotion to 1LT. *See* ECF No. 13 at 18.

Pinto also contends that ¶ 5-11 is not a discharge authority and therefore discharge under ¶ 5-11 could not have been proper. He asserts that although ¶ 5-11 "contain[s] rules for separating 2LTs not selected for promotion, it is not the authority for that action, as indicated in AR 600-8-29 ¶ 1-13b(3)," which dictates discharge under ¶ 4-2a(2). ECF No. 18 at 23. But, as discussed, the Court finds that ¶ 1-13b(3)'s requirement to use ¶ 4-2a(2) as the discharge authority only applies when the promotion review authority does not utilize the waiver provision of ¶ 1-13b(1). In using the waiver provision, the Army was free to process Pinto's discharge under any appropriate provision of AR 600-8-24, including ¶ 5-11.

---

[1] Pinto's original DD-214 listed the Army's separation authority as "AR 600-8-24, para 5-9," which applies to promotions above 1LT. The ABCMR determined that the DD-214 should be corrected to reflect the discharge authority as "AR 600-8-24, para 5-11," which applies to the 1LT promotion. ECF No. 13 at 18.

[2] The "promotion review authority" is "the first officer in the officer's chain of command with general court-martial convening authority." AR 600-8-29 ¶ 1-13(b)(1).

Even if the Army had erred in choosing to separate Pinto under ¶ 5-11 rather than ¶ 4-2a(2), it would have been harmless error because Pinto would have been mandatorily discharged anyway under 10 U.S.C. § 630(2), which requires any 2LT who has been found not qualified for promotion to be discharged "at the end of the 18-month period beginning on the date on which the officer is first found not qualified for promotion." Similarly, ¶ 5-11 provides that "officer[s] not recommended for promotion to the grade of 1LT . . . will be separated not later than 90 calendar days after the Promotion Review Authority approves the nonrecommndation [sic] for promotion." Thus, there was no scenario in which Pinto would not have been involuntarily separated based on his non-promotion. Pinto's argument fails to comply with § 630 because he would prohibit the Army from discharging him even though it denied him promotion.

### 3.   Separation Program Designator Code error.

Next, Pinto argues that a discharge under ¶ 5-11 could not have complied with AR 635-8 ¶ 5-6z, which requires that the DD Form 214 filled out for each officer upon discharge include "the corresponding [Separation Program Designator ("SPD") Code] for the regulatory authority and reason for separation." ECF No. 18 at 23-24. The list of SPD codes is found in AR 635-5-1. Pinto asserts that ¶ 5-11 cannot be an appropriate discharge authority because it has no corresponding SPD code in AR 635-5-1. ECF No. 18 at 23-24. Indeed, the SPD code listed on Pinto's DD Form 214 is "JGB." ECF No. 17-1 at AR 135. And at the time of Pinto's discharge, AR 635-5-1 listed the corresponding regulatory authority for code JGB as AR 600-8-24 ¶ 2-41 or ¶ 5-9 and the narrative reason for discharge was listed as "Non-Selection, Permanent Promotion"; it did not reference ¶ 5-11. ECF No. 21-3 at 3.

The Government acknowledges that code JGB did not specifically mention ¶ 5-11 at the time of Pinto's separation but contends that such a minor procedural irregularity cannot invalidate ¶ 5-11 as a separation regulation. ECF No. 21 at 26. The Government asserts that "[t]he regulatory authorities for separation exist independently, and inform the separation codes, not vice versa." *Id.* The Court agrees. Indeed, AR 635-8 ¶ 5-6z makes clear that SPD codes "are intended for [Department of Defense] internal use in collecting data to analyze statistical reporting trends that may influence changes in separation policy." The Court will not presume to invalidate the Army's authority to discharge Pinto under ¶ 5-11 based on an irregularity in the list of discharge codes created for the Army's internal recordkeeping purposes.[3] Furthermore, code JGB's narrative reason "Non-Selection, Permanent Promotion" is consistent with Pinto's separation under ¶ 5-11. ECF No. 21 at 26. The Army had discretion to discharge Pinto under ¶ 5-11 and a minor irregularity in the list of designator codes does not invalidate ¶ 5-11 as a separation authority. Therefore, the Court finds no procedural error requiring reconsideration of the Army's and ABCMR's decisions.

---

[3] Notably, the Army has since amended AR 635-5-1 so that the applicable regulatory authority listed for SPD Code JGB is simply "AR 600-8-24" without reference to specific paragraphs. The narrative reason for discharge is still listed as "Non-selection, permanent promotion." ECF No. 21-4 at 3.

**V.      Conclusion**

For the foregoing reasons, the Court hereby:

1.  **DENIES** Pinto's Motion for Judgment upon the Administrative Record, ECF No. 18; and

2.  **GRANTS** the Government's Partial Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record, ECF No. 21.  The Clerk of the United States Court of Federal Claims is directed to enter judgment in favor of the Government.

**IT IS SO ORDERED.**

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge

11